1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   TOVIA LAFAELE,

11          Plaintiff,                    No. CIV S-07-2091 GEB JFM P

12       vs.

13   CHRIS CARTER,

14          Defendant.              FINDINGS & RECOMMENDATIONS

15   _____/

16          Plaintiff is a state prisoner proceeding pro se.  Plaintiff seeks relief pursuant to 42

17   U.S.C. § 1983 and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C.

18   § 1915.  This proceeding was referred to this court by Local Rule 72-302 pursuant to 28 U.S.C.

19   § 636(b)(1).

20          Plaintiff alleges that he is unlawfully confined because of due process violations

21   that occurred during his parole hearings.[1]  Plaintiff contends that defendant has violated his right

22   to free speech by failing to respond and return plaintiff's appeal to INS.  Plaintiff also contends

23   _____

24       [1] Plaintiff was convicted of first degree murder and kidnaping for robbery in 1976.
     (Complaint, Ex. C.)  Plaintiff's minimum eligible parole date was March 17, 1983.  (Complaint,
25   Ex. C.)  Plaintiff has had at least fifteen parole suitability hearings, and on February 24, 2003, the
     Board denied plaintiff parole for one year.  (Id.)  On August 26, 2004, plaintiff was denied parole
26   for three more years.  (Complaint, Ex. D.)

                                    1

1  the California Department of Corrections has used the INS hold to repeatedly deny plaintiff

2  parole despite his "blemish-free" prison record in violation of his Eighth Amendment rights.

3  Plaintiff seeks a declaratory judgment and a preliminary and permanent injunction requiring

4  defendant to expunge the INS hold from plaintiff's prison records.  Plaintiff requests that

5  defendant be required to pay compensatory damages in the amount of $10,000.00 and punitive

6  damages in the amount of $20,000.00.

7          Plaintiff attempts to sue Chris Carter, an employee of the Immigration and

8  Naturalization Service, United States Department of Justice.  Plaintiff's claims against the INS

9  are not cognizable under § 1983 because the INS is a federal agency, rather than a person acting

10  under color of state law.  Because plaintiff is pro se, however, the complaint will be liberally

11  construed as an attempt to state a claim under Bivens v. Six Unknown Named Agents, 403 U.S.

12  388 (1971) (direct action under the Constitution available against federal employees).

13          To state a private cause of action under Bivens and its progeny, plaintiff must

14  allege:  (1) that a right secured by the Constitution of the United States was violated, and (2) that

15  the alleged deprivation was committed by a federal actor.  Van Strum v. Lawn, 940 F.2d 406,

16  409 (9th Cir.1991) (§ 1983 and Bivens actions are identical save for the replacement of a state

17  actor under § 1983 by a federal actor under Bivens ).[2]

18          When a state prisoner challenges the legality of his custody and the relief he seeks

19  will result in an earlier or immediate release from confinement, his sole federal remedy is a writ

20  of habeas corpus.  Wilkinson v. Dotson, 544 U.S. 74 (2005); Preiser v. Rodriguez, 411 U.S. 475,

21  500 (1973).[3]  Court records do not reflect plaintiff has filed a petition for writ of habeas corpus in

22

23  [2]  When reviewing a Bivens action for which there is no case on point, therefore, § 1983
    cases are applied by analogy.  See, e.g., Butz v. Economou, 438 U.S. 478, 504 (1978) (no
24  distinctions for purposes of immunity between state officials sued under § 1983 and federal
    officials sued under Bivens); Van Strum v. Lawn, 940 F.2d at 409 (same statute of limitation
    should be used for § 1983 actions as for Bivens actions).

25

26  [3]  Plaintiff is advised that the exhaustion of state court remedies is a prerequisite to the
    granting of a petition for writ of habeas corpus.  28 U.S.C. § 2254(b)(1).  The exhaustion

1    this district.[4]  It appears the injunctive relief requested by plaintiff in this civil rights action is

2    sought for the purpose of invalidating the denial of parole or enjoining prison officials from using

3    the INS hold to deny petitioner future parole bids.

4            When a prisoner seeks money damages for confinement that is alleged to be

5    unlawful, the prisoner may not seek damages pursuant to § 1983 until he has established, through

6    appropriate state or federal remedies, that his confinement is or was in fact unlawful.  Edwards v.

7    Balisok, 520 U.S. 641, 648 (1997); Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).  Plaintiff's

8    denial of parole has not been invalidated.  Accordingly, plaintiff's request for damages is

9    premature.  To the extent that plaintiff seeks damages for the denial of parole, his claims are not

10   cognizable under § 1983 at this time and must be dismissed without prejudice.  Plaintiff may

11   re-file such claims in a new case at a later time if the denial of parole is "reversed on direct

12   appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such

13   determination, or called into question by a federal court's issuance of a writ of habeas corpus."

14   Heck, 512 U.S. at 486-87.

15           Plaintiff contends he has been deprived of his citizenship in violation of his due

16   process rights under the Fourteenth Amendment to the United States Constitution.  Plaintiff

17   provides a copy of a baptismal certificate attesting to his birth on July 12, 1948 in Nu'uuli,

18   American Samoa.  (Complaint, Ex. A.)  Plaintiff has also provided a copy of the April 17, 1990

19   _____

20   requirement is satisfied by providing the highest state court with a full and fair opportunity to
     consider all claims before presenting them to the federal court.  Picard v. Connor, 404 U.S. 270,
21   276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir.), cert. denied, 478 U.S. 1021
     (1986).  Plaintiff is cautioned that the habeas corpus statute imposes a one year statute of
22   limitations for filing non-capital habeas corpus petitions in federal court.  In most cases, the one
     year period will start to run on the date on which the state court judgment became final by the
23   conclusion of direct review or the expiration of time for seeking direct review, although the
     statute of limitations is tolled while a properly filed application for state post-conviction or other
24   collateral review is pending.  28 U.S.C. § 2244(d).

25       [4]  Plaintiff is advised that petitions for writ of habeas corpus must be filed in the federal
     district court encompassing the county in which plaintiff was convicted.  For example, if plaintiff
26   was convicted in Sacramento County Superior Court, he would file his petition for writ of habeas
     corpus in this court.

1  hold placed in plaintiff's prison records by Special Agent Chris Carter.  (Complaint, Ex. C.)  The

2  detainer states that the INS has initiated an investigation to determine whether he is subject to

3  removal, and that the detainer is for notification purposes only--the only action it asks the

4  institution to take is to notify the agency thirty days prior to plaintiff's release, or of his death or

5  transfer to another institution.  In short, plaintiff is attempting to challenge the substance of

6  decisions that have not yet been made, not the detainer itself.  If the INS does not accept his

7  contention that he is a citizen and commences removal proceedings, plaintiff will be able to

8  present his contentions in an immigration hearing, and can also challenge in the Court of Appeals

9  any decision that he is not a citizen, after fully exhausting within the INS system.  See Scales v.

10  INS, 232 F.3d 1159, 1161 (9th Cir.2000) (noting that nationality claims should be brought in

11  court of appeals but that the court may transfer such a claim to district court if it finds that there

12  is a genuine issue of material fact).

13          Plaintiff's claim that he has been deprived of citizenship rights fails to state a

14  § 1983 claim.

15          The legal definitions of U.S. national and U.S. citizen are not
         synonymous.  All citizens of the United States are nationals, but
16       some nationals, such as persons born in American Samoa and other
         U.S. territorial possessions, are not citizens.  8 U.S.C. § 1408;
17       Perdomo-Padilla v. Ashcroft, 333 F.3d 964, 967-69 (9th Cir.2003).
         The term "national of the United States" is defined as including "a
18       person who, though not a citizen of the United States, owes
         permanent allegiance to the United States." 8 U.S.C. § 1101(a)(22).
19       Thus, a claim to be a U.S. national is not a claim to be a citizen,
         but a claim to be a member of a broader group that includes
20       citizens as well as others.[5]

21

22          [5] As a legal concept, the term U.S. national came into use in the after-math of the
Spanish-American War to clarify the status of persons born in the territories that the United
23  States acquired from Spain.  Hampton v. Mow Sun Wong, 426 U.S. 88, 91, 107-13, 96 S.Ct.
1895, 48 L.Ed.2d 495 (1976); Rabang v. INS, 35 F.3d 1449, 1452 (9th Cir.1994); Cabebe v.
24  Acheson, 183 F.2d 795, 797-801 (9th Cir.1950). We recently have given the term a narrow
construction, holding that an alien does not become a national simply by signing a statement of
25  allegiance in a naturalization application, Perdomo-Padilla, 333 F.3d at 972, or by serving in the
U.S. armed forces after taking the standard military oath of allegiance.  Reyes-Alcaraz v.
26  Ashcroft, 363 F.3d 937, 939-41 (9th Cir.2004).

1   See United States v. Karaouni, 379 F.3d 1139, 1142-43 (9th Cir. 2004).  Plaintiff's claim that he

2   is a United States citizen by virtue of his birth in American Samoa, a United States territorial

3   possession, fails as a matter of law.  Moreover, as noted in the INS hold, plaintiff has not yet

4   been determined to be subject to deportation and therefore cannot demonstrate that his

5   deportation is imminent.  Accordingly, plaintiff has failed to state a due process claim against

6   defendant Chris Carter.

7          Plaintiff's attempt to attack defendant's failure to respond to plaintiff's appeal as a

8   free speech challenge also fails to state a § 1983 claim.  This court is not the proper venue in

9   which to challenge initial actions by an INS official; plaintiff must address his concerns directly

10  to that agency.  As noted in the INS hold, the April 17, 1990 document was a notice, alerting

11  prison officials and plaintiff that an investigation has been initiated to determine whether plaintiff

12  was subject to deportation.

13         Plaintiff also alleges an Eighth Amendment claim, arguing that the California

14  Department of Corrections and the Board of Prison Terms continue to deny plaintiff parole based

15  on the INS hold.  However, plaintiff has not named either the California Department of

16  Corrections or the Board of Prison Terms as a defendant herein.  Defendant Carter, an INS agent,

17  plays no role in the determination of plaintiff's parole status.  Accordingly, this claim also fails.

18         Even assuming, arguendo, that plaintiff had named these agencies, his claim

19  would fail.  Plaintiff seeks an injunction requiring defendant to expunge the INS hold from

20  plaintiff's prison record.[6]  Because plaintiff's status as a citizen has not yet been adjudicated by

21  the INS, plaintiff's motion to have the detainer expunged from his record is premature.  This

22  court need not now address the question of whether injunctive relief may be available regarding

23  future parole proceedings (see Edwards v. Balisok, 520 U.S. 641, 648-49 (1997), citing O'Shea v.

24  _____

25        [6] Plaintiff has not specifically sought an order enjoining defendants from "continued
    reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior
    to imprisonment."  Biggs v. Terhune, 334 F.3d 910, 917 (9th Cir. 2003).  Such a challenge
26  should be raised in a petition for writ of habeas corpus.

5

1  Littleton, 414 U.S.488, 501-02 (1974) (noting that a "proper balance in the concurrent operation

2  of federal and state court counsels restraint against the issuance of injunctions against state

3  officers engaged in the administration of the state's criminal laws(.)")

4  　　　　　IT IS HEREBY RECOMMENDED that this action be dismissed without

5  prejudice.

6  　　　　　These findings and recommendations are submitted to the United States District

7  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

8  days after being served with these findings and recommendations, plaintiff may file written

9  objections with the court.  The document should be captioned "Objections to Magistrate Judge's

10  Findings and Recommendations."  Plaintiff is advised that failure to file objections within the

11  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

12  F.2d 1153 (9th Cir. 1991).

13  DATED:  October 30, 2007.

14

15  _____

UNITED STATES MAGISTRATE JUDGE

16

17  001;lafa2091.56b

18

19

20

21

22

23

24

25

26